IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TOMMY DARLAND,<br><br>Defendant. | No. CR04-2010<br><br>REPORT AND RECOMMENDATION |

On the 10th day of April 2012, this matter came on for hearing on the First Supplemented and Substituted Petition for Warrant or Summons for Offender Under Supervision (docket number 41) filed on March 27, 2012. The Government was represented by Assistant United States Attorney Daniel C. Tvedt. Defendant Tommy Darland appeared in person and was represented by his attorney, E. Daniel O'Brien.

## I. RELEVANT FACTS AND PROCEEDINGS

On September 29, 2004, Defendant was sentenced to a 70-month term of imprisonment following his plea of guilty to conspiracy to manufacture and attempt to manufacture 50 grams or more of methamphetamine (mixture) and distribute and possess with intent to distribute methamphetamine (mixture). *See* docket number 25. The Court also ordered a 4-year term of supervised release. According to the First Supplemented and Substituted Petition, Defendant's supervised release commenced on October 24, 2008.

Defendant admits that on approximately June 30, 2009, he used marijuana and methamphetamine at a friend's house. It is undisputed that Defendant violated the mandatory condition that he not use a controlled substance, and violated standard condition No. 9, which prohibits association with persons engaged in criminal activity. As a consequence of his drug use in June 2009, Defendant's supervision was modified to require serving two consecutive weekends in a designated facility.

On May 13, 2011, Defendant failed to provide a urine specimen as required. United States Probation Officer Amy Moser testified at the instant hearing that Defendant appeared on the following day and gave a negative urine sample.

On December 19, 2011, Defendant provided a diluted urine specimen. Four days later, on December 23, 2011, Defendant contacted the Oelwein Police Department and reported that his girlfriend, Jade McAllister, had slashed his tire. According to his written statement, Defendant picked up McAllister around 3:00 a.m. as she was walking home from work. Defendant "proceeded to ask her where she wanted to get the 50$ [sic] she owes me." They started arguing and, according to Defendant, McAllister "started beating me in the head with her beer bottle." Defendant claims he told McAllister to get out of the car, while McAllister reported to police that she jumped out of the car as it was still moving. In any event, the Oelwein Police Department investigated the incident. Defendant did not report his contact with the Oelwein police to his probation officer, although standard condition No. 11 requires him to notify his probation officer within 72 hours after being "questioned" by a law enforcement officer.

On January 18, 2012, Defendant provided a valid negative urine sample. On February 12, 2012, Defendant provided a diluted urine specimen. On March 12, 2012, Defendant again provided a diluted urine specimen.

At approximately 1:00 a.m. on March 18, 2012, Officer Christopher Hartmann of the Oelwein Police Department was southbound on Highway 150 on routine patrol. As he approached the intersection with County Road 281, Hartmann observed a red pickup truck, heading northbound on Highway 150, passing a minivan in a no-passing zone. After activating his radar, Hartmann determined the pickup was traveling 63 miles per hour in a 55 mile-per-hour zone. After passing the vehicle going opposite directions, Hartmann activated his emergency lights and turned around. At about that time the pickup, which was being driven by Defendant, turned onto County Road 281. After

2

traveling a short distance, it turned again onto Frederick Avenue and then into a trailer court. Hartmann testified that he had difficulty catching the vehicle.

According to Officer Hartmann, Defendant was driving at least 40 miles per hour in the trailer court, which has a 10 mile-per-hour speed limit. Defendant then "screeched" to a stop as he pulled into his garage. Hartmann observed Defendant exit the vehicle, leaving the lights of his vehicle on and the driver's door open. As Hartmann was exiting his vehicle, Defendant was at the doorway to his residence. Hartmann commanded Defendant to come back down the stairs, but did not receive any response. Hartmann repeated the command a second time, just as Defendant was opening the door and a dog was coming out. At that point, Hartmann drew his weapon and commanded Defendant to come down the stairs. This time, Defendant complied.

Officer Hartmann described Defendant as upset, jittery, and nervous. Hartmann repeatedly told Defendant to keep his hands out of his pockets, but he would not comply. Hartmann told Defendant to stand still, but he kept walking back-and-forth. At one point, Defendant emptied his pockets and threw the contents on the ground. Hartmann opined that Defendant "had a hard time focusing." Hartmann holstered his weapon and patted Defendant down, but did not find any weapons or contraband.

Within a few minutes, Lieutenant Ronald Voshell of the Oelwein Police Department arrived at the scene. Voshell testified that he has 13 years of law enforcement experience and is a certified "drug recognition officer." According to Voshell, in approximately 2005 he received additional training in drug recognition. Voshell also serves as a field sobriety test instructor.

Lieutenant Voshell testified that he knew Defendant prior to the incident and described him as "very pleasant," "laid back," and "very polite." According to Voshell, however, on that night Defendant was agitated, jittery, very animated, nervous, and high-

3

strung.[1] Voshell observed that Defendant's pupils were dilated and barely reacted when stimulated by light. According to Voshell, this suggested that Defendant was under the influence of a central nervous system stimulant. Voshell then administered field sobriety tests.[2] Defendant failed the walk-and-turn test and the one-leg stand test. Defendant's mother testified Defendant was discharged from the Marine Corps for "bad knees," a hereditary condition. Defendant did not fail the horizontal gaze nystagmus test. This suggested to Voshell that Defendant was not under the influence of alcohol, but was under the influence of a central nervous system stimulant. A preliminary breath test ("PBT") yielded a .000 result. Defendant told Voshell that he was on medication, but could not identify what medicine he was taking, and said that it was not on his person or in his house. Defendant denied the use of methamphetamine. After being transported to the police station, Defendant was read the implied consent advisory, but refused to submit a urine sample. Officer Hartmann testified that while at the police station, Defendant's mood varied from very calm to very angry. Defendant was charged with operating while under the influence, and that charge is currently pending.

Defendant was apparently released from jail later that morning. According to his mother, Barb Darland, Defendant stayed at his home Sunday night and went to work on Monday. Upon returning from work, however, it appeared that Defendant's home had been broken into and, therefore, Defendant went to stay at his mother's house in Hazleton on Monday evening. Defendant was arrested on this revocation proceeding on Wednesday, March 21, 2012. Prior to his initial appearance on March 22, Defendant provided a urine specimen while in the marshal's holding cell. The specimen tested

---

[1] Defendant's mother, Barb Darland, testified that Defendant "has been jittery since the day he was born."

[2] A portion of the field sobriety tests and the booking process were recorded. *See* Government's Exhibit 1. The Court was unable to activate the sound. In any event, the recording adds little to the Court's analysis.

positive for amphetamine. Probation Officer Moser testified that the test result reflects either the use of methamphetamine or prescription amphetamine. Moser was unaware of any prescription which Defendant may have for amphetamine.

## II. DISCUSSION

The primary reason the Government seeks revocation of Defendant's supervised release is the events of March 18, 2012. The evidence set forth above supports a finding that Defendant was operating a motor vehicle while under the influence of a controlled substance. It also appears that he initially attempted to elude Officer Hartmann by speeding back to his house, screeching to a stop (leaving the lights of his vehicle on and the driver's door open), and running to the door of his residence. Lieutenant Voshell, who is a certified drug recognition officer, testified that Defendant appeared to be under the influence of a controlled substance. Defendant refused to submit a urine sample.

It is also significant that when Defendant provided a urine specimen prior to his initial appearance on March 22, he tested positive for amphetamine. While no testimony was offered at the time of hearing, Defendant's positive test on March 22 suggests that he may have used a controlled substance after he was released from jail on March 18 and prior to his arrest on March 21. It is also noteworthy that the Defendant's last two urine specimens prior to these events (February 12 and March 12) were diluted. Defendant also provided a diluted urine specimen on December 19, 2011, just days prior to the incident with his girlfriend.

All of the violations are "Grade C" violations. With a prior criminal history category III, the guideline range of imprisonment is 5 to 11 months. The maximum statutory term of imprisonment is 3 years. According to the supervised release violation worksheet, the mandatory revocation provisions of 18 U.S.C. § 3583(g) do not apply.

The probation office recommends that Defendant's supervised release be revoked and that he be sentenced to 5 months imprisonment. The Government also seeks revocation and suggests that Defendant be sentenced "within the guideline range." Both

the probation office and the Government suggest that following imprisonment, the Defendant be continued on supervised release until the original termination date (October 23, 2012). Defendant asks that his supervised release not be revoked, but that a modification may be appropriate. For example, Defendant suggests that he could be placed in a halfway house and permitted to continue his employment.

During the first 3 years of his supervised release, Defendant did relatively well. Although he admits using controlled substances in June 2009, there is no evidence that he used controlled substances during the next 2-1/2 years. According to the supervised release violation worksheet, Defendant is employed full-time at Transco Railcar in Oelwein, and was described by his employer as "a very good employee." Unfortunately, Defendant's compliance with supervised release has deteriorated in the last several months. In December 2011, Defendant provided a diluted urine specimen, followed closely by an unpleasant encounter with his girlfriend, which he failed to report to his probation officer after being questioned by police. While Defendant provided a valid negative urine sample in January 2012, the urine samples provided in February and March were diluted. It appears that Defendant was under the influence of a controlled substance during the early morning hours of March 18 and, perhaps, used a controlled substance after being released from jail. The events of March 18 were aggravated by Defendant's attempts to evade apprehension.

After considering all of the facts and circumstances, I believe that Defendant's supervised release should be revoked, but that he be sentenced at the low end of the guideline range. That is, I recommend a 5-month term of imprisonment. I also believe, however, that Defendant would benefit from an extended term of supervision. If Defendant is incarcerated for 5 months, his original term of supervised release will expire almost immediately following his release from custody. Given Defendant's apparent return to the use of controlled substances, I believe his supervised release should be extended for a period of one year.

## III. RECOMMENDATION

For the reasons set forth above, it is respectfully **RECOMMENDED** that Defendant's supervised release be revoked and that he be sentenced to serve five (5) months imprisonment. It is further **RECOMMENDED** that following his release from custody, Defendant's term of supervised release be extended to October 23, 2013.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on April 10, 2012.*

DATED this 16th day of April, 2012.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA